IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ELLINGTON CREDIT FUND, LTD. | § | |
| AND ECF SPECIAL SECURITIES, LLC. | § | |
| | § | |
| V. | § | A-07-CA-421 LY |
| | § | |
| SELECT PORTFOLIO SERVICING, INC., | § | |
| ET AL. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Manufacturers and Traders Trust Company's Motion to Dismiss, or in the Alternative to Transfer Venue, filed on June 13, 2007 (Clerk's Docket No. 14); Defendants Select Portfolio Servicing, Inc., Mountain West Realty Corporation, Residential Real Estate Review, Inc., Alta Real Estate Services, Inc. and Pelatis Insurance Agency Corporation's Joint Motion to Dismiss, or in the Alternative Motion to Transfer, filed on June 13, 2007 (Clerk's Docket No. 15); Defendant MBIA Insurance Corporation's Motion to Dismiss for Improper Venue or, Alternatively, Motion to Transfer Venue, filed June 13, 2007 (Clerk's Docket No. 16); Plaintiffs' Limited Omnibus Response, filed on July 10, 2007 (Clerk's Docket No. 25); and Defendants' Reply Briefs, filed on August 3, 2007 (Clerk's Docket Nos. 35, 37, & 41). Also before the Court is Defendant MBIA Insurance Corporation's Motion to Strike Declaration of Mitchell Levine, filed on August 3, 2007 (Clerk's Docket No. 38), and Plaintiff's Response, filed on August 14, 2007 (Clerk's Docket No. 48).[1]

---

[1] Defendant MBIA moves to strike the declaration of Mitchell Levine on the basis that the declaration is conclusory and not based on the personal knowledge of the declarant. The Court finds that the statements within the declaration are admissible because Mitchell Levine clarifies in the

On June 21, 2007, the District Court referred the above matters to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court conducted a hearing on the motions on October 17, 2007. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. GENERAL BACKGROUND

This lawsuit arises out of Plaintiffs Ellington Credit Fund, Ltd. and ECF Special Securities, LLC's ("Plaintiffs") investment in pooled and securitized loans held in trust by Defendant Manufacturers and Trades Trust Company ("M&T"), insured by MBIA Insurance Corporation ("MBIA"), and serviced by Defendant Select Portfolio Servicing, Inc. ("SPS"). These securitizations are governed by trust agreements known as "Pooling and Servicing Agreements" ("PSA"). Plaintiffs claim that the Defendants violated the PSA's in this case. Specifically, Plaintiffs allege that SPS improperly serviced the loans and improperly enriched its subsidiaries (Defendants Mountain West Realty Corporation, Pelatis Insurance Agency Corporation, Residential Real Estate Review, Inc. and Alta Real Estate Services, Inc.) to Plaintiffs' detriment. Plaintiffs further allege that M&T and MBIA failed to fulfill their duties as trustee and insurer, respectively.

On April 17, 2007, Plaintiffs field their Original Petition in the 345th Judicial District of Travis County, Texas. Plaintiffs' lawsuit alleges breach of contract, breach of duty to disclose,

---

declaration that it is based on his personal knowledge. Defendant's Motion goes to the weight, rather than the admissibility of the declaration. Accordingly, Defendant MBIA's Motion to Strike (Docket No. 38) is HEREBY DENIED.

Case 1:07-cv-00421-LY   Document 67   Filed 11/02/07   Page 3 of 20

breach of fiduciary duty, unjust enrichment, fraud, negligent misrepresentation, conversion, and breach of duty of good faith and fair dealing. On May 30, 3007, Defendants removed the case to federal court on the basis of diversity jurisdiction. Plaintiffs are both citizens of the Cayman Islands, and no Defendant is a citizen of the State of Texas (Defendant SPS, Mountain West, Alta Real Estate, and Pelatis are citizens of Utah; Residential Real Estate is a citizen of Delaware; and M&T and MBIA are citizens of New York).

Defendants have now filed various Motions to Dismiss for improper venue or, in the alternative to transfer venue to either the Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York. Defendants have also filed numerous other motions to dismiss which will not be addressed here, as this Report and Recommendation is limited to the venue issues raised by the various motions.

## II. ANALYSIS

Defendants argue that this case should be dismissed or transferred to either the Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York based on a forum selection clause contained in one of the underlying Agreements. That clause mandates that any dispute arising under the Agreement must be litigated in the Bankruptcy Court for the Southern District of New York. Based upon this forum selection clause, Defendants argue that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Alternatively, Defendants contend that for the convenience of parties and witnesses, this case should be transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

**A.     The Agreements**

As noted, Plaintiffs allege that SPC (as servicer), M&T (as trustee), and MBIA (as insurer) breached contractual duties owed to Plaintiffs pursuant to the Pooling and Servicing Agreements ("PSA").  Plaintiffs allege that because they own partial interests in 21 mortgage securitization trusts serviced pursuant to the PSA, they are intended beneficiaries of the PSA and are entitled to enforce those agreements.  ContiFinancial ("Conti") sponsored such trusts in 1997 and 1998 and acted as loan servicer in connection with the trusts until 2000, when Conti filed for bankruptcy.[2] At such time, SPC became the loan servicer for the trusts.  In connection with the transfer of servicing rights under the PSA, Conti and MBIA entered into a Side Servicing Agreement ("SSA"), which purported to amend the PSA to include certain servicing standards.

Defendants argue that the SSA contains a mandatory forum selection clause which requires the litigation of this lawsuit in the Bankruptcy Court of the Southern District of New York. Defendants also contend that the PSA contains a permissive forum selection clause which supports its alternative argument that this case should be transferred to the Southern District of New York. Both the PSA and the SSA contain choice of law provisions which require the application of New York state law to this dispute.[3]

---

[2] Conti's bankruptcy proceeding is in its final stages in the Bankruptcy Court for the Southern District of New York.

[3] Section § 11.11(a) of the PSA states:

> In view of the fact that Owners are expected to reside in many states and outside the United States and the desire to establish with certainty that this Agreement will be governed by and construed and interpreted in accordance with the law of a state having a well-developed body of commercial and financial law relevant to transactions of the type contemplated herein, this Agreement and each Certificate shall be construed in accordance with and governed by the laws of the State of New

When a forum selection clause forms the basis of a motion to dismiss or transfer venue, the first step is for the Court to determine whether the clause applies to the Plaintiffs' claims. *Gutermuth Investments, Inc. v. Coolbrands Smoothies*, 2006 WL 2933886 at * 3 (W.D. Tex. Oct. 11, 2006). The Court thus begins its analysis with that determination.

1.  **The PSA**

The forum selection clause contained in the PSA provides the following:

> The parties hereto hereby irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York and any court in the State of New York located in the City and County of New York, and any appellate court from any thereof, in any action, suit or proceeding brought against it or in connection with this Agreement or any of the related documents or the transactions contemplated hereunder or for recognition or enforcement of any judgment, and the parties hereto hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard or determined in such New York State court or, to the extent permitted by law, in such federal court. . . . To the extent permitted by applicable law, the parties hereto hereby waive and agree not to assert by way of motion, as a defense or otherwise in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such courts, that the suit, action, or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that the related documents or the subject matter thereof may not be litigated in or by such courts.

---

> York applicable to agreements made and to be performed therein, without giving effect to the conflicts of law principles thereof.

The SSA's choice of law provision provides as follows:

> Section 7. <u>Governing Law.</u>  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE, EXCEPT FOR MATTERS RELATING TO THE VALIDITY OF CORPORATE ACTION, WHICH SHALL BE GOVERNED BY THE LAWS OF THE JURISDICTION OF INCORPORATION OR ORGANIZATION OF THE RELEVANT CORPORATION.

PSA, Plaintiffs' Limited omnibus response at Exh. A, § 11.11(b). The Parties agree and the Court concludes that this forum selection clause is permissive, not mandatory.

While Plaintiffs acknowledge that Section 11.11(b) permits venue in federal court in New York for this case, they contend the section is not applicable to their lawsuit because another section of the PSA – § 6.11 – grants them the exclusive power to choose the forum in this case. However, Defendants contend that § 6.11 does not apply here since Plaintiffs have failed to satisfy the conditions precedent set forth in that provision. The Court agrees. Section 6.11 provides the following:

> Section 6.11   <u>Control by Owners</u>
>
> The Certificate Insurer or the Owners of a majority of the Percentage Interests represented by the Offered Certificates then Outstanding with the consent of the Certificate Insurer or, if there are no longer any Class A Trust to Class B Certificates then Outstanding, by such majority of the Percentage Interests represented by the Class R Certificates then Outstanding *may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the Certificates or the Trust Estate*, including, but not limited to, those powers set forth in Section 6.03 and Section 8.20 hereof, *provided that*:
>
> (1) such direction shall not be in conflict with any rule of law with this Agreement;
>
> (2) *the Trustee shall have been provided with indemnity satisfactory to it*; and
>
> (3) the Trustee may take any other action deemed proper by the Trustee, as the case may be, which is not inconsistent with such direction; provided, however, that neither the Sellers nor the Trustee, as the case may be, need take any action which it determines might involve it in liability or may be unjustly prejudicial to the Owners not so directing.

PSA, Plaintiffs' Limited omnibus response at Exh. A, § 6.11 (emphasis added). Plaintiffs cannot rely on the above-provision because they have failed to provide the Trustee with any indemnity,

much less "satisfactory indemnity" as is required by § 6.11(2). Plaintiffs have failed to come forward with any evidence that they have satisfied § 6.11(2), and therefore they cannot rely on § 6.11. Thus, the permissive forum selection clause in § 11.11(b) is the controlling forum selection clause in the PSA.

  **2.  SSA**

The forum selection clause contained in the Side Servicing Agreement (SSA) provides the following:

> Section 8. <u>Consent to Jurisdiction</u>. Each of the parties hereto hereby (a) agrees that any suit, proceeding or action at law or in equity (hereinafter referred to as an "<u>Action</u>") *arising out of or relating to* this Agreement shall be instituted only in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), (b) waives any objection which it may have now or hereafter to the laying of the venue of any such Action, (c) irrevocably submits to the jurisdiction of the Bankruptcy Court in any such Action, and (d) waives any claim or dense of inconvenient forum.....

SSA, Plaintiffs' Limited omnibus response at Exh. E at § 8 (emphasis added). Although the Parties agree that by its language this clause is mandatory, they disagree as to whether it is enforceable in the instant case. Plaintiffs argue that the clause is unenforceable because the Bankruptcy Court does not have jurisdiction to review Plaintiffs' claims in this case, while Defendants contend that this case would fall within the bankruptcy court's "related to" jurisdiction.

**B.  Motions to Dismiss under Rule 12(b)(3)**

Defendants first argue that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) pursuant to the mandatory forum selection clause contained in the SSA. However, dismissal under Rule 12(b)(3) and § 1406(a) is not the appropriate

7

procedure for enforcing a forum selection clause when a federal court is the parties' agreed forum, as is the case here.

In *Lim v. Offshore Specialty Fabricators*, *Inc.*, 404 F.3d 898, 902 (5th Cir.), *cert. denied*, 546 U.S. 826 (2005), the Fifth Circuit determined that a Rule 12(b)(3) motion is the proper procedural vehicle to request dismissal based on a forum selection clause. Significantly, however, the forum selection clause in *Lim* designated a forum in a foreign country, and the Fifth Circuit has not considered whether dismissal for improper venue is proper where the designated venue is another federal court, rather than a state court or foreign jurisdiction. *See Youngblood v. JTH Tax Services, Inc.*, 2006 WL 1984656, at * 3 (W.D. Tex. July 17, 2006) (*citing Southeastern Consulting Group, Inc. v. Maximus, Inc.*, 387 F. Supp.2d 681, 683 (S.D. Miss. 2005)). The majority of courts which have considered the issue have held that when a federal court is the agreed forum under an enforceable forum selection clause the proper way to enforce such a clause is through a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), and not a motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a). *See Southeastern Consulting Group, Inc.*, 387 F. Supp.2d at 684; *Speed v. Omega Protein, Inc.*, 246 F. Supp.2d 668, 671 (S.D. Tex. 2003); *Wal-Mart Stores, Inc. v. Qore, Inc.*, 2007 WL 2769835 at * 2 (N.D. Miss. Sept. 20, 2007); *Canvas Records, Inc. v. Koch Entertainment Distribution, LLC,* 2007 WL 1239243 at * 5 (S.D. Tex. April 27, 2007); *Gutermuth Investments, Inc. v. Coolbrands Smoothies*, 2006 WL 2933886 at * 3 (W.D. Tex. Oct. 11, 2006); *Youngblood,* 2006 WL 1984656 at * 3; *Dorsey v. Northern Life Ins. Co.*, 2004 WL 2496214, at *9 (E.D. La. Nov. 5, 2004).

Because Defendants have moved to dismiss this case based on a forum selection clause designating another federal court as the agreed forum, the Court finds that the proper procedure for

enforcing the clause is through a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), and not a motion to dismiss for improper venue pursuant to Rule 12(b)(3). Accordingly, the Court will recommend that the District Court **DENY** the Defendants' Motions to Dismiss in its entirety, and analyze the case for transfer under either § 1406(a) or § 1404(a).

**C.    Motions to Transfer under 28 U.S.C. § 1406(a)**

Defendants also argue that this case should be transferred under 28 U.S.C. § 1406(a) to the Bankruptcy Court for the Southern District of New York pursuant to the forum selection clause in the SSA. Section 1406(a) provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Defendants argue that the forum selection clause in the SSA – mandating that any lawsuit arising out of or relating to the SSA shall be instituted only in the Bankruptcy Court for the Southern District of New York – renders venue in the Western District of Texas improper under § 1406(a). Because venue was laid in a location other than the Southern District Bankruptcy Court, Defendants contend venue was "wrong" under § 1406(a), thereby requiring dismissal or transfer. While some courts have held that the violation of a forum selection clause renders venue improper and allows the application of § 1406(a), other courts have held that only the criteria set forth in 28 U.S.C. § 1391, and not a forum selection clause, can measure the propriety of venue for purposes of § 1406(a). *See* 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3827 (2007). The Court need not resolve this conflict, however, because the Court finds that the Bankruptcy Court for the Southern District of New York is not a district in which this lawsuit "could have been brought," as is required under § 1406(a).

9

The difficulty with the bankruptcy court is that it would not have jurisdiction over the claims in Plaintiffs' First Amended Complaint. Bankruptcy courts are courts of limited jurisdiction and their jurisdiction is "wholly 'grounded in and limited by statute.' " *See Bass v. Denney* (*In re Bass*), 171 F.3d 1016,1022 (5th Cir. 1999) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate. *Celotex Corp.*, 514 U.S. at 307. The bankruptcy court's jurisdiction is divided into "core" and "non-core" proceedings. *In re Spillman Development Group, LTD,* 2007 WL 1812802, at * 3 (Bankr. W.D. Tex. June 19, 2007). Core proceedings arise under title 11 or arise in a case under title 11. *Id.* (citing 28 U.S.C. § 157(b)). "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Non-core proceedings are those proceedings that are otherwise related to a case under title 11. *Spillman*, 2007 WL 1812802, at * 3 (citing 28 U.S.C. § 157(c)(1)). To determine whether a particular matter falls within this general bankruptcy jurisdiction, a court must determine whether the outcome of that proceeding could have any conceivable effect on the estate being administered in the bankruptcy proceeding. *In re Wood*, 825 F.2d at 93. However, after a debtor's reorganization plan has been confirmed, the bankruptcy court's jurisdiction "ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001). "No longer is expansive bankruptcy jurisdiction required to facilitate 'administration' of the debtor's estate, for there is no estate left to reorganize." *Id.* Thus, "[t]he

question is not whether a post-confirmation proceeding could conceivably affect the debtor's estate, but whether it actually pertains to the implementation of the plan." *In re Pak-Mor Manf. Co.*, 2007 WL 2327615, at * 3 (W.D. Tex. Aug. 10, 2007).

Plaintiffs' lawsuit alleges breach of contract, breach of duty to disclose, breach of fiduciary duty, unjust enrichment, fraud, negligent misrepresentation, conversion, and breach of duty of good faith and fair dealing. None of the claims are made against a debtor in any bankruptcy proceeding pending in the Southern District of New York. Plaintiffs' claims could not be considered "core" bankruptcy proceedings because they do not involve rights created by bankruptcy law, but instead involve rights created by state law. *See In re Wood*, 825 F.2d at 97 ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding."). Thus, this lawsuit could only be heard by the Bankruptcy Court if Plaintiff's claims are otherwise "related to" the bankruptcy case.

Defendants contend that the instant lawsuit is related to the bankruptcy case of *In re Conti Financial*, Case No. 00-12184, which is pending in the United States Bankruptcy Court for the Southern District of New York. However, as Plaintiffs have pointed out, Conti's Plan of Reorganization was confirmed over six years ago and the Plan in the case has been fully administered. *See* Exhibit E to Plaintiffs' Response, Order Confirming Third Amended Joint Plan of Reorganization of ContiFinancial Corporation and Affiliates Under Chapter 11 of the Bankruptcy Code, *In re Conti Financial*, Case No. 00-12184 (Bankr. S.D.N.Y. Dec. 20, 2000). As noted above, once a debtor's reorganization plan has been confirmed, bankruptcy jurisdiction ceases to exist except for matters *pertaining* to the implementation or execution of the plan. *In re Craig's Stores,* 266 F.3d at 390. Defendants have failed to explain how any claim in the instant suit pertains to the

11

implementation or execution of the bankruptcy plan in *ContiFinancial*. Based upon the record before the Court, including the Parties' oral argument at the motions' hearing in this case, it is clear that Plaintiffs' state law claims in this lawsuit do not bear on the interpretation or execution of the debtor's plan in the Conti Bankruptcy Case and, therefore, do not fall within the bankruptcy court's post-confirmation jurisdiction. *See Id.* at 390 (holding that bankruptcy court did not have jurisdiction over post-confirmation breach of contract claims where claims did not bear on the interpretation or execution of the debtor's plan).[4] Accordingly, the Court finds that this lawsuit could not "have been brought" in the Bankruptcy Court for the Southern District of New York as is required for transfer under § 1406(a) and the Court will therefore recommend that this case not be transferred under § 1406(a).[5]

---

[4] Even if the lawsuit did pertain to the Conti Bankruptcy Case, the Court notes that transferring the case to the Bankruptcy Court could have the effect of depriving the Plaintiffs of a jury trial in this case since bankruptcy courts may only conduct jury trials by special designation and with the express consent of the all of the parties. *See* 28 U.S.C. § 157(e).

[5] Because the Court has determined that the Bankruptcy Court does not have jurisdiction to review Plaintiffs' claims, the Court need not address Plaintiffs' other arguments regarding why the forum selection clause is unenforceable. However, the Court will note that Plaintiffs' claim that the forum selection clause is unenforceable because Plaintiffs were not signatories to the SSA is without merit. As explained by the Fifth Circuit in *Hellenic Investment Fund, Inc., v. Det Norske Veritas,* 464 F.3d 514 (5th Cir. 2006), under "the direct-benefit estoppel theory," nonsignatories can be bound by a forum selection clause when they knowingly exploit the agreement containing the clause. Although Plaintiffs have carefully attempted to avoid any mention of the SSA in their First Amended Complaint, Plaintiffs have clearly benefitted from the Agreement and have asserted claims invoking the SSA. Accordingly, under the direct-benefit estoppel theory, Plaintiffs cannot avoid the SSA's forum selection clause simply because they were not signatories to the Agreement.

**D.      Motions to Transfer Venue under § 1404(a)**

In the alternative to their Motion to Dismiss, Defendants argue that this case be transferred to the United States District Court for the Southern District of New York or the Bankruptcy Court of the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Because the Court has already determined that the Bankruptcy Court does not have jurisdiction over this lawsuit, the Court will only address whether this case should be transferred to the United States District Court for the Southern District of New York.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960). The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). In considering a motion to transfer venue pursuant to § 1404(a), the district court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935 (1989). Further, courts should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P. v. A & H Supply Co.*, 396 F. Supp.2d 766, 776 (S.D. Tex. 2005). It is well settled that the party seeking the transfer of venue bears the burden of

13

demonstrating that the case should be transferred. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

### 1. Is the Southern District of New York an appropriate venue for this case?

The first issue that the Court must address in ruling on the Motion to Transfer is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir.), *cert. denied*, 540 U.S. 1049 (2003) (quoting 28 U.S.C. § 1404(a)). Under the general venue provision of 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded only on diversity of citizenship may be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subjection of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a). Importantly, there can be more than one district in which a substantial part of the events giving rise to the claim occurred. 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3806.1 (3rd ed. 2007). Thus, in this case, it is possible that venue could be proper in both the Western District of Texas and the Southern District of New York.

In the instant case, it is undisputed that each of the Defendants have conducted business within the Southern District of New York by undertaking activities in connection with the securitizations at issue in this case and all of the Defendants are subject to personal jurisdiction there. Indeed, in the permissive venue selection clause of the PSA, all of the parties have agreed that this

suit could have been filed in the Southern District of New York, they have "irrevocably submit[ted]" to that court's jurisdiction, and they have waived any argument that they are not subject to that court's jurisdiction or that proceeding there would be inconvenient. PSA § 11.11(b). Plainly, this lawsuit "could have been brought" in the Southern District of New York.

### 2.     Convenience Factors under § 1404(a)

The Court must next focus on whether Defendants have demonstrated that the "convenience of parties and witnesses" requires the transfer of this action to the Southern District of New York. In deciding whether to transfer under this standard, the Court must consider various private and public interests in making its decision. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). The private concerns include: (1) plaintiff's choice of forum; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; (4) the cost of attendance for willing witnesses; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public concerns are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Id.*

Finally, Congress intended in § 1404(a) "to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*citing Van Duen v. Barrack*, 376 U.S. 612, 622 (1964)). Congress contemplated that this "flexible and individualized analysis" included "consideration of the parties' private expression of their venue preferences." *Id.* at 29-30. Consistent with this, "[t]he presence of a forum-selection clause . . . will be a significant factor that

15

figures centrally in the district court's calculus." *Id.*   Thus, for example, when it considers the convenience of the Southern District of New York forum, it is appropriate that the Court give significance to the parties' expressed preference for a New York forum. *Id.*

### a. Private Factors

As noted above, a plaintiff's choice of forum is a factor to be considered under § 1404(a), "but in and of itself is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F.3d at 434.  In addition, the weight to be accorded the plaintiff's choice of forum "is diminished where plaintiff brings suit outside his home forum," as in the instant case. *Heppner v. Krause Plow Corp., Inc.*, 2001 WL 124947 at * 2 (N.D. Tex. Feb. 18, 2001) (internal citations omitted).  It is not entirely clear why Plaintiffs chose to file this suit in state court in Travis County, Texas, but it appears to relate to the fact that the consultant it chose to analyze the loan files it received when it exercised its "clean-up call" rights (TMI Financial) is located in Austin.  Further, Plaintiffs' counsel are located in Austin.[6]  Obviously, the presence of the Plaintiffs' consultant in Austin does not create a strong reason to maintain the suit here.

Other private factors include the relative ease of access to sources of proof and the convenience of the witnesses.  The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to § 1404(a).  *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F. Supp. 1392, 1396 (S.D. Tex. 1992); 15

---

[6]The Fifth Circuit has specifically held that the location of counsel "is irrelevant and improper for consideration in determining the question of transfer of venue," *In re Horseshoe*, 337 F.2d at 434, and Plaintiffs do not contend that the location of their counsel should be considered by the Court in its venue analysis.

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3851 (3rd ed. 2007).

Defendants argue that the private factors weigh in favor of transferring this case to New York since the loan documents, policies, and records relating to the securitizations at issue in this suit are located in New York, not Texas. Defendants point out that numerous entities and witnesses involved in the transactions at issue in this case are located in New York, not Texas. Defendant MBIA has identified four former employees who worked on the ContiMortage Home Equity Loan Trusts who allegedly will provide essential testimony in this case. MBIA's Motion to Dismiss at p. 14-16. Defendant MBIA emphasize that these witnesses reside within the subpoena power of the Southern District of New York, but not within the subpoena power of this Court.

Plaintiffs respond that much of the evidence and most of the witnesses in this case are located throughout the country, including the Western District of Texas, due to the fact that the underlying mortgages were located all around the country. Plaintiffs argue that key evidence and witnesses will include persons associated with TMI Financial, its previously-mentioned consultant, whose work Plaintiffs assert led to the discovery of irregularities and tortious activities allegedly committed by the Defendants in this case. As a result of contracting with TMI Financial, Plaintiffs had the files for the Called Securitizations sent to Austin, Texas for servicing. So many of the documents are now in Austin.

Based upon the information presented with the motions and response, it appears that the evidence and potential witnesses in this case are located throughout the country, not just in New York. Although the Trusts and numerous related records are located in New York, the Court finds that "when documents can be easily copied and shipped," this is not an important factor in the

transfer analysis. *See Z-Tel Communications, Inc. v. SBC Communications, Inc.,* 331 F. Supp.2d 567, 576 (E.D. Tex. 2004). Further, many of the documents have in fact already been copied and shipped. And while some witnesses reside in New York, there is not such a significant concentration of witnesses there to make this issue an important factor in the analysis. Accordingly, the Court finds that the private factors do not strongly support litigating the case in either Texas or New York.

### b.     Public Factors

As discussed above, the public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. Unlike the private factors, the Court finds that the public factors clearly weigh in favor of transferring this case to the Southern District of New York.

Judges in the Southern District of New York are better equipped to adjudicate this case since the parties have agreed that New York law shall govern this case. In addition, it is more appropriate for citizens of New York to bear the burden of jury duty in matters that concern the application of New York law than to require Texas citizens to be burdened with jury duty and the application of New York law. *See Gutermuth*, 2006 WL 2933886, at * 5. Further, the State of New York has a greater interest in litigating this case than this Court since the trusts at issue are maintained in New York, not Texas. Finally, Plaintiffs have failed to identify any administrative difficulties in the Southern District of New York which would unduly delay the adjudication of the case as compared to litigating the case in the Western District of Texas. Based upon the foregoing, the Court finds that the public factors weigh in favor of transferring the case to the Southern District of New York.

### c. The Forum Selection Clause

Lastly, the Court notes that Plaintiffs agreed to the permissive forum selection clause contained in the PSA whereby they would "irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York" in any suit brought against it. While the clause is clearly a permissive forum selection clause, the clause is an indication that the Plaintiffs agreed that New York would be an agreeable and convenient forum in which to sue, or be sued, related to the PSA. Thus, this factor also weighs in favor of transfer.

### 3. Conclusion

After carefully considering the foregoing factors, the parties' briefs, the relevant caselaw, and the entire case file, the Court finds that the interests of justice and the convenience of the parties and witnesses dictate that this case should be transferred to the Southern District of New York. Accordingly, the Court recommends that the District Court GRANT Defendants' Motion to Transfer Venue.

## III. RECOMMENDATION

Based upon the foregoing, the undersigned RECOMMENDS that the Defendants' Motions to Dismiss/Transfer (Clerk's Docket Nos. 14, 15, & 16) be GRANTED IN PART and DENIED IN PART. The Court RECOMMENDS that the District Court DENY Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406. The Court FURTHER RECOMMENDS that the District Court DENY Defendants' Motions to Transfer under 28 U.S.C. § 1406. Finally, the Court RECOMMENDS that the District Court GRANT Defendants' Motions to Transfer and ORDER that this case be TRANSFERRED to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of November, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE